UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Michael DeMarco,

            Plaintiff,

                                                  **Hon. Hugh B. Scott**

            v.                                            01CV279A

                                                  **Report
                                                   and
                                                 Recommendation**

COMMISSIONER OF SOCIAL
SECURITY[1],

            Defendant.

    Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 8 and 14).

## INTRODUCTION

    This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

    The plaintiff, Michael DeMarco ("DeMarco" or "plaintiff"), filed an application for disability insurance benefits on November 22, 1996. That application was denied initially and on reconsideration. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who

---

[1] For convenience, defendant will be identified by the official title only. See Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g) (action survives despite change in office of Commissioner).

considered the case <u>de novo</u> and concluded, in a written decision dated October 26, 1998, that the plaintiff was not disabled within the meaning of the Social Security Act.  The ALJ's decision became the final decision of the Commissioner on February 16, 2001, when the Appeals Council denied plaintiff's request for review.

The plaintiff commenced this action on April 16, 2001 (Docket No. 1).  The parties moved for judgment on the pleadings.

## FACTUAL BACKGROUND[2]

DeMarco asserts that he became disabled on September 30, 1994 due to back pain resulting from a herniated lumbar disc, impairment of the knees, and numbness in his right leg. (R. 140, 149, 151).  DeMarco was born on June 17, 1935 and was 63 years old at the time of the ALJ's decision (R.134). He completed 10th grade and later earned a GED (R. 46, 144). He worked from May 5, 1963, to September 30, 1994, as a City of Niagara Falls police officer (R. 46, 144). His job was as a patrol officer responsible for maintaining law and order. (R. 46-47).

## MEDICAL AND VOCATIONAL EVIDENCE

DeMarco injured his back on June 25, 1986, when his foot slipped on gravel causing him to twist his back as he tried to get into his patrol car (R. 173, 249). He was treated for acute low back strain and possible underlying lumbar disc disease by Dr. Casmer Leone  (R. 167).  He was

---

[2] References noted as "(R.__)" are to the certified record of the administrative proceedings.

unable to work after June 28, 1986, but did return to work on August 4, 1986 (R. 167-168).

In June 1987, a CT Scan of plaintiff's lumbar spine revealed a disc protrusion to the right of the mid-line at L4-L5 level which could cause encroachment on the right L5 nerve root (R. 170-171). Chiropractor Stephen A. Grande, D.C. began his continuing treatment of DeMarco in August of 1987. (R. 259-269).

Dr. Kumar Bahuleyan, a neurosurgeon, began treating the plaintiff on May 26, 1988. He diagnosed DeMarco as having a herniated disc at L4-L5. According to Dr. Bahuleyan, a CT Scan showed a soft tissue shadow at L4-L5 extending from the posterior border of the disc space encroaching into the right neural foramin consistent with the diagnosis of a disc herniation (R. 173). Sensory examination showed depression of pin-prick along the lateral aspect of the right leg and dorsum of the right foot (R. 173). At that time, Dr. Bahuleyan believed conservative management with pain medication was indicated unless and until symptoms worsened (R. 173-174). DeMarco remained on prescription pain medication (R. 272).

DeMarco had continued complaints of right-sided low back pain radiating to his right toes and numbness and coldness in his right foot (R. 176-177, 180, 182). On October 4, 1991, Dr. David Hayes, a radiologist, performed a magnetic resonance imaging ("MRI") of the plaintiff's lumbar spine. The MRI showed moderate dessication and mild-moderate narrowing of the L3-L4 and L4-L5 disc spaces; slight asymmetry at L4-L5 suggesting the possibility of disc herniation, anteriorly and extending to the right at L4-L5, and mild stenosis of the spinal canal at L4-L5. Dr. Hayes' impression of disc herniation of the lumbar (L4-L5) region was consistent with his review of the results of the plaintiff's 1987 CT Scan (R. 176).

On March 4, 1992, DeMarco injured his right knee while on duty when he twisted it as he moved a desk with a fellow employee (R. 190, 234). He was seen at Niagara Falls Memorial Hospital and allowed to return to work that day with no stooping, crouching or stair climbing. Dr. James Dunlop, who treated DeMarco at the hospital, suspected a torn right medial meniscus (R. 199-204). This diagnosis was later confirmed. On March 5, 1992, Dr. George Kartalian examined the plaintiff and found internal derangement, a "locked" knee with swelling, impaired ambulation, and instability and weakness of the joint (R. 200). An MRI was performed in May of 1992 demonstrating a tear of his right medical meniscus with effusion (fluid). He was prescribed anti-inflammatory medications and physiotherapy, and taken out of work indefinitely (R. 193, 200-204, 219-234).

On June 10, 1992, Dr. Dunlop examined DeMarco and determined that he was not able to return to work as he possibly needed surgical repair of the knee tear. He recommended that DeMarco use crutches, a knee brace and obtain a second opinion from Dr. Stephen Joyce, an orthopedic surgeon (R. 248). DeMarco was examined by Dr. Joyce on June 29, 1992. Dr. Joyce observed that plaintiff continued to have moderate swelling evidenced by an increase in circumference of the right knee, and impairments of joint mobility involving extension, flexion, and external rotation (R. 215). He also noted some swelling of the leg in general (R. 215). Evaluation of his x-rays also showed some degenerative changes of the knee joint and surrounding bones (R. 215). On August 3, 1992, Dr. Joyce performed surgery to repair a torn medial meniscus in DeMarco's knee. (R. 183-185). He was cleared to return to work on September 23, 1992 (R. 208-211). On November 6, 1992, Dr. Joyce found that the plaintiff had full range of motion in the affected knee but continued to require exercise therapy (R. 207). The

range of motion of both knees was equal, but he had persistent swelling of his right knee as manifested by an increase in circumference of the joint (R. 188). Dr. Joyce evaluated DeMarco's condition again on March 12, 1993, X-rays of both knees revealed degenerative osteoarthritis in both knees, slight irregularity of the articular surface, marginal bony spur; narrowing of medial compartment bilaterally, and cortical deformity within the proximal left tibial shaft medially (R. 192).

According to a Workman's Compensation evaluation on August 5, 1993, DeMarco suffered a permanent 10 percent loss of use of the right leg due to this knee impairment (R. 193).

Dr. Louis J. Marconi, a Chiropractor, performed an evaluation at the request of the plaintiff's employer on August 17, 1994 (R. 249-253). He concluded that DeMarco had subjective as well as objective findings to support lumbar spine dysfunction and disc disease (R. 251). He stated that DeMarco's condition was static and not likely to improve with continued conservative medical management (R. 252). A history and physical examination revealed that "Minor's" and "Linder's" signs were positive for low back pain and the range of motion in his lumbar spine was decreased in all directions, by more than 25% for flexion alone (R. 251). He was able to walk toe-to-toe and heel-to-heel, but could only do a "modified" squat and only with extreme difficulty. The Braggard and Bechterew's tests also indicated low back pain and elicited sciatic symptoms in both legs. A Milgram's test was also positive for disc protrusion (R. 251).

On January 29, 1997, Dr. Jean Cange, a family practitioner, evaluated the plaintiff at the request of the Social Security Administration (R. 255-258). At this time, Dr. Cange reviewed a report of the diagnostic findings, specifically both a CT Scan and MRI, which indicated a herniated disc. Dr. Cange also reviewed DeMarco's complaints of knee pain. She found a history

5

of "locking" and pain, with full range of motion of his knees. X-rays performed on January 29, 1997, revealed degenerative arthritis in both knees and small joint fluid in left knee (R. 258). Dr. Crange's impression was bilateral knee pain, left worse than right (R. 257). X-rays also revealed slight scoliosis (curvature) in the lumbar region (R. 258).

In February 1997, Dr. Grande, completed a residual functional capacity evaluation of the plaintiff and concluded he had lumbar disc syndrome and sciatic neuritis (R. 259-264). He noted that DeMarco was 5'10½" and weighed 270 pounds (R. 259). Demarco saw Dr. Grande for chiropractic manipulations and exercise therapy as palliative treatment (R. 260). In a report dated June 9, 1998, Dr. Grande opined as follows:

> Michael DeMarco has been a patient of mine since August 14, 1987. I have seen him on a regular basis, approximately every two weeks, sometimes more since August 14, 1987.
>
> Mr. DeMarco has a diagnosis of lumbar disc syndrome with sciatic neuritis. He has a positive MIRI for L4-L5 disc herniation. He suffers from pain originating in his lower back and radiating down his right leg to his toes. He has broken sleep patterns and has numbness in his right foot. He finds it uncomfortable to sit or stand for more than one hour without pain increasing. Laying down is the best position to help ease his pain. He cannot lift more than 10 pounds without causing pain. He has good and bad days. While chiropractic treatments have kept him functional to some degree and decreased his pain to a limited extent, it has not eliminated his pain in a significant degree to allow him to be gainfully employed.
>
> In my opinion, Mr. DeMarco is unable to engage in substantial gainful employment. Diagnosis is poor and return to work is not expected (R. 285).

The record reflects that from the time of the 1986 incident in which he injured his back, until the alleged onset of total disability in 1994, DeMarco's employer made a series of accommodations allowing him to continue to work notwithstanding his complaints of low back

pain radiating to his lower extremities. (R. 49-56). Initially, DeMarco was taken off patrol duty and given a position inside the jail (R. 49). He performed this job approximately one year because he had difficulty handling the prisoners, getting them into court, and subduing them as necessary. DeMarco states that he continued to experience pain in his lower back and down his right leg to his toes (R. 49-51). To further accommodate DeMarco's medical condition, his employer assigned him to a Booking Officer position (R. 51). This job entailed working behind the desk, but if physical help was needed with regard to the prisoners, he was required to do it. According to the plaintiff, his impairment again made it difficult to perform this job. After approximately one year, his employer placed him in the Traffic Division (R. 51-52). In this position, DeMarco's job entailed sitting at a desk and preparing accident reports. Because his back pain increased when he was sitting and would radiate down his leg, DeMarco states that he had difficulty at this job also. According to the plaintiff, he would have to get up and walk around. DeMarco testified that even though his employer accommodated him by allowing him to walk as necessary, he could not sit long enough to do the job which resulted in reports pilling up and not being filed timely (R. 53-54, 82). His employer then assigned him to another position, which was called a "catch-all job." However, according to the plaintiff, this job required that he be in and out of the cars, again causing increased pain in his body, back and legs (R. 55-56).

DeMarco, who had 33 years of service, testified that he retired from the Police Force, after 33 years of service, on September 30, 1994 because he could not do the work anymore (R. 71, 83).

At the administrative hearing DeMarco testified that he is 5 feet 10 inches tall and weighs approximately 275 pounds (R. 45). His usual weight before he was injured was 180 to 190

pounds (R. 46). DeMarco asserted that he has refused to have surgery because there is no guarantee that his pain would go away or lessen, and he could become crippled (R. 63-64). He testified that he initially took prescribed pain medication but stopped because he did not want to become addicted to it and because the medicine made him so drowsy that he felt like sleeping all the time (R. 61).

A vocational expert, Julie Andrews, also testified at the request of the ALJ. She testified that Demarco, subject to certain restrictions, retained the residual functional capacity to perform as a police aide, a surveillance system monitor, a gate-guard. (R. 87). Andrews testified that if the ALJ were to credit Andrews subjective complaints, a finding that he was disabled was required. (R. 95, 107). Further, Andrews opined that the ability to get hired for a position for a 59-year-old and older individual is significantly reduced (R. 89, 95).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that his impairment prevents him from returning to her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

    (1) whether the plaintiff is currently working;

    (2) whether the plaintiff suffers from a severe impairment;

    (3) whether the impairment is listed in Appendix 1 of the relevant regulations;

>(4) whether the impairment prevents the plaintiff from continuing his past relevant work; and
>
>(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing his past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work he has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to his past relevant work given his residual functional capacity. Washington, supra, 37 F.3d at 1442.

In the instant case, the ALJ determined that Demarco suffers from severe degenerative disc disease of the lumbar spine, mild degenerative joint disease of the lumbosacral spine, and moderate degenerative joint disease of the knees. The ALJ held that the plaintiff's impariments

did not meet the listings set forth in 20 C.F.R. part 404, Subpt. P, Appendix 1 ("Appendix 1"). The ALJ determined that Demarco's impairments did not preclude his ability to perform his past relevant work as a police officer. (R. 31). To reach this determination, the ALJ found that the plaintiff's "alleged complaints of back and knee pain and related functional limitations are out of proportion to the signs and findings documented by acceptable medical sources." (R. 31).

The plaintiff argues that his impairment meets the Appendix 1 listing for disorders of the spine pursuant to Appendix 1, §1.05(c) (2001). Under that provision, an individual meets the Appendix 1 listing if he or she suffers from a vertobrogenic disorder (i.e. herniated nucleus puplosus, spinal stenosis) "persisting for at least three months despite prescribed therapy and is expected to last 12 months. With both 1 and 2: 1. Pain, muscle spasm and significant limitation of motion in the spine; and 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss." The record does not reflect that the plaintiff suffers from radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss as required to meet the Appendix 1 listings.

Demarco also asserts that the ALJ erred in failing to fully credit his subjective complaints of pain. The ALJ noted that Demarco worked for eight years after his 1986 back injury and for more than two years after his knee injury and that Demarco has not taken any prescription pain medication since 1986. The plaintiff testified that he takes extra-strength Anacin three times a day for pain. Further, the ALJ's credibility determination places significant emphases on the fact that Demarco has not been treated by a "physician" with respect to his impairments since 1993. In this regard, the ALJ totally ignores any palliative chiropractic treatment the plaintiff received from Dr. Grande. Although the ALJ need not be bound by the opinion of a Chiropractor as to

11

the ultimate finding of disability of the plaintiff, the fact that Demarco received regular Chiropractic treatments does relate to the issue of whether or not the plaintiff has obtained regular treatment to relieve symptoms of pain related to his impairment.  The ALJ cannot completely ignore this evidence in making his credibility determination. <u>Camasto v. Bowen</u>, 1989 WL 25251 (S.D.N.Y. 1989); <u>Parris v. Barnhart</u>,  2004 WL 3008744, *10 (N.D.Ill.,2004)(ALJ determination vacated in part due to failure to consider reports of chronic pain by chiropractor); <u>Bailey v. Barnhart</u>, 2002 WL 31455983, *1 (N.D.Ill.,2002)(noting on remand that the Seventh Circuit had vacated the ALJ's determination, in part, because the  ALJ improperly excluded and ignored a chiropractor's opinion that [the plaintiff's] pain would increase after two to three hours of work because [the plaintiff's] tolerance for work is "an issue crucial to this case"); <u>Barry v. Shalala</u>,  885 F.Supp. 1224 (N.D.Iowa,1995)(Chiropractor's letter regarding issue of pain should not have been ignored, even though, under social security regulations, chiropractor's report is not given as much evidentiary weight as medical doctor's report).  The remainder of the ALJ's determination relies upon the proper assessment of the plaintiff's credibility as to his subjective pain.

In light of the above, this matter should be remanded for further administrative proceedings as to the credibility of the plaintiff's subjective complaints of pain.

## **CONCLUSION**

For the foregoing reasons, this Court recommends that the decision of the Commissioner be VACATED and this matter be REMANDED for further administrative proceedings.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within ten (10) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).  <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>**  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>F.D.I.C. v. Hillcrest Associates</u>, 66 F.3d 566 (2d Cir. 1995); <u>Wesolak v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **<u>Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.</u>**

So Ordered.

                                                       s/Hon. Hugh B. Scott  
                                                    United States Magistrate Judge

Buffalo, New York  
August 8, 2005